OPINION
{¶ 1} Defendant-appellant Maurice Brooks appeals the maximum sentence imposed upon him by the Youngstown Municipal Court. He states that the court not only failed to consider the maximum sentence criteria for misdemeanor sentencing but also affirmatively placed upon the record evidence that the court relied wholly on a factor not listed as a required statutory factor for sentencing to a maximum jail term. Because the trial court made clear that its maximum sentence was based upon appellant's perceived lie rather than the only two available criteria for sentencing a misdemeanor defendant to the maximum, appellant's argument would have had merit up until a few months ago.
 {¶ 2} However, a recent Supreme Court case on the unconstitutionality of the statutorily required findings for sentencing felons to the maximum effectively destroys the validity of the required statutory findings for sentencing misdemeanants to the maximum. See State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. Although there is evidence on the record at the sentencing hearing that the trial court failed to correctly utilize the existing statutory maximum sentencing findings, resentencing is necessary as that was the remedy imposed by the Supreme Court in Foster and because the trial court's entry stated that it considered all relevant statutory criteria. For the reasons stated below, the judgment of the trial court is reversed and this case is remanded.
 STATEMENT OF THE CASE {¶ 3} Appellant was charged with receiving stolen property, a fourth degree felony since the property involved was a motor vehicle. R.C. 2913.51(A), (C). At his February 18, 2005, preliminary hearing in the Youngstown Municipal Court, he entered into a plea agreement with the city prosecutor whereby the prosecution agreed to amend the charge to a first degree misdemeanor partly due to appellant's lack of a prior record and lack of a juvenile record. (Tr. 2). No recommendation was made as to sentencing. Appellant then pled no contest, and his sentencing hearing immediately proceeded.
 {¶ 4} The victim stated that her car was stolen after she left it running in her driveway. She said she called the police, and they found appellant in her car half an hour later. (Tr. 7). The court asked appellant what he cared to say, and he apologized to the court and the victim. The court then asked, "Why in the world was it okay for you to have participated in this whole car thing? Why is that okay?" (Tr. 7). Appellant responded, "I wasn't even in the car." (Tr. 8).
 {¶ 5} Defense counsel, who was called that morning to fill in for appellant's actual defense counsel, then explained, "Your Honor, if I may, he's entering a no contest plea and entering an Alford plea, to avoid the consequences of proceeding." The court stated, "He's standing there saying he didn't do anything wrong." Defense counsel responded, "I advised him of that, and he understood the nature of today, but he's still maintaining his innocence. He wants to avoid the consequence of the trial, if necessary." (Tr. 8).
 {¶ 6} The court then asked the police officer to explain appellant's involvement. The officer stated that cars stolen in the morning often end up at Wilson High School; so he checked there first. (Tr. 8). The officer said he saw appellant getting out of the stolen vehicle and told him not to run because he works at the high school and recognizes him. (Tr. 8-9). However, the person claimed to be appellant ran off. The officer stated that he arrested appellant when he saw him walking back to school later that morning. The officer also revealed that in his investigation, he heard rumors that someone lent appellant the car after they stole it. (Tr. 9).
 {¶ 7} The court then made the following declarations:
 {¶ 8} "Shame on you, Mr. Brooks, stealing this woman's car. Whether you did it or not doesn't matter to me. You were seen driving it, and you have the absolute audacity to stand here and say that you didn't do anything wrong.
 {¶ 9} "So, not only are you a thief, you're a liar. Had you not lied to me, I would have had some compassion for you, but now you're trying to play me, and I'll not allow that to occur.
 {¶ 10} "You can lie to your mother, you can lie to your father, you can lie to your friends. Do not ever lie to a judge that's about to sentence you because you know what happens when you do that? You get maxed out.
 {¶ 11} "I don't understand how you could think that it's okay to lie in a courtroom and get away with it. Sorry counsel. You have earned yourself six months in jail.
 {¶ 12} "That's the most I can give him, ma'am. Thank you." (Tr. 9-10).
 {¶ 13} The court filed its sentencing entry imposing a maximum sentence that same day, February 18, 2005. Appellant filed timely notice of appeal and received a stay of sentence from the trial court. We threatened to dismiss the appeal in mid-2005. Then, counsel withdrew, and new counsel was appointed. Finally, an appellate brief was filed on December 20, 2005.
 ASSIGNMENT OF ERROR {¶ 14} Appellant's sole assignment of error provides:
 {¶ 15} "THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE UPON THE APPELLANT BECAUSE THE COURT APPLIED FACTORS NOT CONTAINED IN R.C. 2929.22."
 {¶ 16} Appellant argues that the trial court failed to consider the maximum sentence factors in R.C. 2929.22(C) and made affirmative statements regarding reasons not listed in that statute. Appellant complains that the court disapproved of his act of pleading no contest while maintaining his innocence. Appellant notes that there was no indication that the court thought this was the worst form of the offense or that appellant's response to a prior offense demonstrates that the longest jail term was necessary to deter him from committing future crimes.
 {¶ 17} The overriding purposes of misdemeanor sentencing are to punish the offender and to protect the public from future crime by the offender and others. R.C. 2929.21(A). In order to achieve these purposes, the sentencing court shall consider the impact of the offense on the victim, the need to change the offender's behavior, the need to rehabilitate the offender, and the desire to make restitution to the victim and/or the public. Id.
 {¶ 18} A misdemeanor sentence shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing set forth above, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders. R.C. 2929.21(B). The sentencing court has the discretion to determine the most appropriate method of achieving the aforestated purposes and principles of sentencing. R.C. 2929.22(A).
 {¶ 19} In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors: (a) the nature and circumstances of the offense; (b) whether the circumstances surrounding the offender and the offense indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense; (c) whether the circumstances regarding the offender and the offense indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences; (d) whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious; (e) whether the offender is likely to commit future crimes in general. R.C. 2929.22(B)(1). The court may also consider any other relevant factors. R.C. 2929.22(B)(2). And, before imposing a jail term as a sentence for a misdemeanor, the court shall consider the appropriateness of imposing a community control sanction. R.C. 2929.22(C).
 {¶ 20} Although the above advisory provisions give the sentencing court fairly broad discretion, the legislature recently added limitations on a court's ability to impose a maximum sentence for misdemeanants. R.C. 2929.22(C), effective January 1, 2004. This statutory section provides:
 {¶ 21} "A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime." R.C. 2929.22(C).
 {¶ 22} The longest jail term for a first degree misdemeanor authorized under R.C. 2929.24 is one hundred eighty days in jail. R.C. 2929.24(A)(1). This was the sentence imposed by the court herein. However, the court did not make either of the two findings required for sentencing misdemeanor defendants to the maximum in R.C. 2929.22(C).
 {¶ 23} Unlike the pre-Foster felony sentencing scheme, the misdemeanor sentencing scheme does not require the court to make specific findings on the record or provide reasons for those findings. Youngstown v. McElroy, 7th Dist. No. 05MA13,2005-Ohio-6595, ¶ 27; Youngstown v. Glass, 7th Dist. No. 04MA155, 2005-Ohio-2785, ¶ 16. Cf. R.C. 2929.19(B)(2)(d) and (e). Thus, reviewing courts often presume proper statutory sentencing considerations were made upon a general statement that the sentencing criteria were considered even upon a silent record.McElroy, 7th Dist. No. 05MA13 at ¶ 28.
 {¶ 24} However, this is not an absolute presumption. Rather, the appellate court in its review for an abuse of discretion can find that a certain sentence is arbitrary, unconscionable or unreasonable considering the evidence presented relative to the various statutory considerations. Id. at ¶ 26 (noting the standard of review for misdemeanor sentences is abuse of discretion). And, most importantly for our purposes, thepresumption that a sentencing court considered the relevantfactors is only applied if there are not affirmative statementsto the contrary on the record. Id. at ¶ 28.
 {¶ 25} Here, the trial court specifically made statements on the record showing that its maximum sentence may not have been based upon the two available statutory considerations for sentencing misdemeanants to the maximum available jail term. The court expressly admitted that appellant would be "maxed out" due only to the court's belief that he was lying and that the court would not have sentenced him so harshly in the absence of this perceived lie. (Tr. 9).
 {¶ 26} There are affirmative statements evidencing reliance on factors that do not statutorily justify a maximum sentence. Thus, we could not presume that the court made the statutorily required findings for imposing a maximum jail term. See id. at ¶ 28. The affirmative statements destroy the presumption that the court's maximum sentence decision was based upon a worst form of the offense finding or a finding that appellant's conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime. Hence, the maximum sentence imposed on appellant under these circumstances was both illegal and an abuse of discretion upon application of R.C.2929.22(C).
 {¶ 27} Accordingly, prior to February 27, 2006, this case would have been reversed and remanded. On resentencing, the trial court could not then sentence appellant to the maximum unless it found that he committed the worst form of the offense (since the prosecutor conceded that appellant had no prior record and thus the alternative finding could not be made).
 {¶ 28} However, on February 27, 2006, a much anticipated decision was released by the Ohio Supreme Court, which in part erased the statutory required findings for sentencing felons to the maximum. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. The question becomes, what is the effect of this decision on the statutory maximum sentence requirements for misdemeanants?
 STATE V. FOSTER AND ITS EFFECT {¶ 29} In applying various United States Supreme Court holdings to Ohio's felony sentencing code, the Ohio Supreme Court recently decided that various provisions in Ohio's felony sentencing scheme are unconstitutional because they require judicial fact-finding in order to impose a sentence greater than that which could be imposed without such fact-finding. Id. at syllabus. Specifically, certain provisions were found to have violated the right to a jury trial. Id. at ¶ 1-2, applyingApprendi v. New Jersey (2000), 530 U.S. 466 and Blakely v.Washington (2004), 542 U.S. 296. For instance, the Court determined that a worst form of the offense finding used to sentence a defendant to the maximum requires unconstitutional judicial fact-finding beyond that found by a jury or admitted to by a defendant in his plea. Id. at syllabus ¶ 1.
 {¶ 30} As a remedy (rather than requiring juries to apply the sentencing factors or finding that all sentences more than minimum concurrent sentences are improper), the Supreme Court severed the offending provisions. Thus, the offending sections were excised and given no meaning. Id. at ¶ 97, citing UnitedStates v. Booker (2005), 543 U.S. 220. After this severance, judicial fact-finding is no longer required or permitted before a prison term can be imposed as long as that prison term is within the basic ranges of R.C. 2929.14(A). Id. at ¶ 99.
 {¶ 31} So, courts no longer need to make the statutory findings for deviation from the minimum under R.C. 2929.14(B), for imposing a maximum sentence under R.C. 2929.14(C), for imposing consecutive sentences under R.C. 2929.14(E)(4), and for imposing sentences on repeat violent offenders and major drug offenders under R.C. 2929.14(D)(2)(b) and (3)(b). Id. at syllabus. The Supreme Court concluded:
 {¶ 32} "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at syllabus ¶ 7.
 {¶ 33} Because the statutes upon which many sentences are based were declared unconstitutional, the Court stated that all such sentences pending on direct review must be vacated and remanded for new sentencing hearings. Id. at ¶ 103-104, 106. At such hearings, the courts must only consider those portions of the sentencing code that remain unaffected by Foster and can impose any sentence within the relevant range. Id. at ¶ 105. (Technically, by declaring the provisions unconstitutional and severing them, the Court merely made it easier to sentence defendants to non-minimum, maximum and/or consecutive sentences.)
 {¶ 34} Although in Foster, the Court was only faced with the issue of felony sentencing, the section of the misdemeanor statute at issue is modeled after the section of the felony statute declared unconstitutional. For instance, before Foster,
R.C. 2929.14(C) supplied the following requirements for sentencing a felon to the maximum:
 {¶ 35} "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 36} As reviewed above, Foster found this provision to be invalid due to the judicial fact-finding required above and beyond a jury verdict or admission through a guilty plea. And as quoted above, R.C. 2929.22(C) supplies the following requirements for sentencing a misdemeanor defendant to the maximum:
 {¶ 37} "A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime."
 {¶ 38} The two statutes cannot be distinguished in terms of the requirements that the sentencing judge must make factual findings that were not made by a jury or admitted by a defendant above and beyond the typical guilty plea.[1] Thus, we must delve into the issue of whether the Foster holding and rationale inevitably leads to the invalidation of the maximum sentence findings for misdemeanors because they require judicial fact-finding.
 {¶ 39} The Foster opinion states the question presented as "whether Ohio's felony sentencing scheme violates theSixth Amendment to the United States Constitution in the manner set forth in [Apprendi and Blakely]." Foster at ¶ 1. The Court thereafter concluded that Ohio's sentencing statutes violate theSixth Amendment and offend the constitutional principles announced in Blakely. Id. at ¶ 10, 82.
 {¶ 40} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." Although the language of this amendment does not differentiate between serious and petty offenses, the United States Supreme Court states that it is well-established that petty offenses are excluded from the federal jury trial right. See, e.g., Blanton v. City of NorthLas Vegas, Nev. (1989), 489 U.S. 538, 541, In Blanton, the Court held that an offense punishable by imprisonment for six months or less is presumed to be a petty offense unless the defendant can show additional penalties in conjunction with the maximum that make the offense severe. Id. at 543 (maximum sentence potential of six month incarceration plus license suspension does not take case out of petty offense category). See, also, Baldwin v. New York (1970), 399 U.S. 66, 69
(plurality holding that a potential sentence in excess of six months incarceration is sufficiently severe by itself to take the offense out of the category of petty and to required jury trial, with two concurring justices opining that right to jury applies to all crimes regardless of whether they are petty or serious);Cheff v. Schnackenberg (1966), 384 U.S. 373 (plurality ruling no right to jury trial in federal criminal contempt case if punishment is petty sanction of no more than six months).
 {¶ 41} Here, the maximum penalty for this first degree misdemeanor is one hundred eighty days. R.C. 2929.24(A)(1). Consequently, it is presumed to be a petty offense. There are no additional penalties that could arguably make the offense more severe. And, Ohio's legislature has defined a petty offense as one involving a maximum sentence of six months or less. Crim.R. 2(C) and (D). For all of these reasons, the right to a jury trial in the Sixth Amendment to the United States Constitution is inapplicable to this petty offense.
 {¶ 42} However, now that the Ohio Supreme Court has ruled that the general jury trial right is violated when judicial fact-finding occurs in making maximum sentence findings, such holding is relevant to any case for which there exists an Ohio constitutional jury trial right. In fact, after stating that the question presented dealt with the Sixth Amendment and the United States Supreme Court holdings in Apprendi and Blakely, the Ohio Supreme Court in Foster also cited Ohio's relevant constitutional provisions:
 {¶ 43} "Likewise, Section 5, Article I of the Ohio Constitution states that the `right of trial by jury shall be inviolate' and Section 10, Article I confirms the right to `speedy public trial by an impartial jury.' These sections preserve for the accused `all essential and distinguishing features of the trial by jury' known to the common law in Ohio.Work v. State (1853), 2 Ohio St. 296, syllabus." Foster,2006-Ohio-856 at ¶ 2.
 {¶ 44} Thus, the Foster decision was also based upon Ohio constitutional law dealing with the jury trial right. This leaves us with the question of whether the Ohio Constitution provides a jury trial right for petty offenses or whether that right only exists in this state due to statutes and rules. For instance, Ohio statutory law provides:
 {¶ 45} "(A) At any trial, in any court, for the violation of any statute of this state, or of any ordinance of any municipal corporation, except as provided in divisions (B) and (C) of this section, the accused has the right to be tried by a jury.
 {¶ 46} "(B) The right to be tried by a jury that is granted under division (A) of this section does not apply to a violation of a statute or ordinance that is any of the following:
 {¶ 47} "(1) A violation that is a minor misdemeanor;
 {¶ 48} "(2) A violation for which the potential penalty does not include the possibility of a prison term or jail term and for which the possible fine does not exceed one thousand dollars. * * *." R.C. 2945.17. See, also, Crim.R. 23 (serious offender need not demand jury, but petty offender must file timely and written jury demand).
 {¶ 49} Article I, Section 5 of the Ohio Constitution generally provides, "The right of trial by jury shall be inviolate * * *." Furthermore, Article I, Section 10 of Ohio's Constitution, entitled "Rights of Criminal Defendants," states in part: "In any trial, in any court, the party accused shall be allowed * * * to have * * * a speedy public trial by an impartial jury * * *."
 {¶ 50} This constitutional right to a jury trial language seems broad enough to encompass petty offenders. However, so does the language of the Sixth Amendment to the United States Constitution, which as set forth above is consistently held to apply only to serious offenses. Still, Ohio's constitutional language can be considered a bit broader than the federal constitution, and Ohio can interpret its own constitution without regard to the United States Supreme Court's interpretation of the federal constitution to provide greater individual rights than those provided in the federal Constitution. See Eastwood Mall v.Slanco (1994), 68 Ohio St.3d 221, 222, citing PruneYardShopping Ctr. v. Robins (1980), 447 U.S. 74, 81. "* * * [A] state court is entirely free to read its own State's constitution more broadly than this Court reads the Federal Constitution, or to reject the mode of analysis used by this Court in favor of a different analysis of its corresponding constitutional guarantee." City of Mesquite v. Aladdin's Castle, Inc. (1982),455 U.S. 283, 293. Or, a state court can use the United States Supreme Court's interpretation of the federal constitution as guidance and apply its holdings to its own constitution. On the issue of the right to jury trial, it appears that the Ohio Supreme Court has historically recognized a constitutional right to a jury trial for petty offenses where there is a potential for incarceration and, with a minor deviation along the way, still does. We now review the relevant Ohio law on the subject.
 {¶ 51} On the one hand, the Eighth District (which previously held that the felony maximum sentence statute is unconstitutional under Blakely) has held pre-Foster that the doctrine espoused in Blakely would not invalidate R.C. 2929.22(C), the misdemeanor maximum sentence statute at issue herein. State v.McQuerry, 8th Dist. No. 85053, 2005-Ohio-2181, ¶ 9. Their rationale was based upon the fact that the state and federal constitutional right to a jury is not absolute. Id. at ¶ 8, citing State v. Tate (1979), 59 Ohio St.2d 50, 51-52. Their decision relied wholly on the fact that the right is automatic in Ohio for serious offenses but must be demanded for petty offenses. Id. at ¶ 8, citing Crim.R. 23(A). They concluded that since the right is not automatic in petty offense cases, the jury trial right is not violated by judicial fact-finding in misdemeanor sentencing. Id. at ¶ 9.
 {¶ 52} However, the fact that a jury must be demanded in a petty offense case does not answer the question of whether the right to a jury is constitutionally required in petty offense cases in Ohio (if demanded) or whether that right would be violated by judicial fact-finding for misdemeanor maximum sentencing as it is violated for identical fact-finding in felony maximum sentencing. The Foster Court found invalidity even in cases involving guilty pleas, where the right to a jury trial is waived.[2] Thus, the fact that a jury must be demanded for a petty offense is not a sufficient rationale for finding that judicial fact-finding in sentencing does not violate a jury trial right for petty offenders.
 {¶ 53} We acknowledge that a 1990 editor's comment to Baldwin's Annotated Article I, Section 5 of the Ohio Constitution states that the only intent of the provision is to preserve the jury right as applied at common law to felonies and serious offenses but not to petty offenses. However, this is nothing more than a secondary source; one that is even less persuasive than legislative history as it is mere commentary by some person at the publisher's office.
 {¶ 54} We also acknowledge the following statement by the Ohio Supreme Court, which at first, seems to weigh against a constitutional right to a jury trial in petty offense cases:
 {¶ 55} "Equally without merit is appellant's contention that he was entitled to be tried before a jury; this contempt is a petty offense within constitutional contemplation (see Cheff v.Schnackenberg (1966), 384 U.S. 373, 86 S.Ct. 1523,16 L.Ed.2d 629; Bloom v. Illinois (1968), 391 U.S. 194, 88 S.Ct. 1477,20 L.Ed.2d 522 and R.C. 2705.05), and thus there need be no jury trial." State v. Weiner (1974), 37 Ohio St.2d 11, 13.
 {¶ 56} This statement and the cite to United States Supreme Court law implies that the Court believed there was no constitutional right to a jury in any petty offense case. We note, however, that this was a contempt case and that the Court did not mention whether there was a failure to make a jury demand. Regardless, the Ohio Supreme Court has since made statements recognizing that there is an Ohio constitutional right to a jury in even petty offense cases. For instance, in Tate,
the very case cited by Eighth District in McQuerry, the Supreme Court held:
 {¶ 57} "The accused's right to be tried by a jury is securedin this state by Article I, Section 10 of the Ohio Constitutionand R.C. 2945.17. Since the potential, as well as the actual,penalty imposed for this misdemeanor violation was imprisonment,appellant Tate possessed this right. However, `(t)he guarantee of a jury trial in criminal cases contained in the state and federal Constitutions is not an absolute and unrestricted right in Ohio with respect to misdemeanors, and a statute, ordinance or authorized rule of court may validly condition the right to a jury trial in such a case on a written demand therefor * * *.'Mentor v. Giordano (1967), 9 Ohio St.2d 140, 224, N.E.2d 343, paragraph one of the syllabus. Such a rule is `not in any way violative of the constitutional right to trial by jury.' Hoffmanv. State (1918), 98 Ohio St. 137, 120 N.E. 234, paragraph one of the syllabus." State v. Tate (1979), 59 Ohio St.2d 50, 515-2
(emphasis added).
 {¶ 58} In that case, the petty offender demanded a jury trial but never received one. The state argued that he implicitly waived his right by standing silent during the bench trial. But, the Supreme Court disagreed. The Court explained that every reasonable presumption should be made against the waiver "especially when it relates to a right or privilege deemed so valuable as to be secured by the Constitution." Id. at 53. The Court then concluded that since the written waiver statute was not complied with, the misdemeanor defendant "was denied hisconstitutional right to trial by jury." Id. at 54 (emphasis added).
 {¶ 59} Notably, the Court included in its quote of the relevant constitutional law the provision in Article 1, Section 10 that begins, "Except in cases involving offenses for which the penalty provided is less than imprisonment in the penitentiary * * *." Id. at 51, 55, fn. 2. Although this sentence and the one providing the right to a jury are separated by a period, the Court still found its language relevant. See id. Additionally, it is noteworthy that the written waiver statute the Supreme Court instructed must be followed for even petty offenders once a jury has been demanded provided that the waiver shall contain the following pertinent language:
 {¶ 60} "I fully understand that under the laws of this state, I have a constitutional right to a trial by jury." R.C. 2945.05.
 {¶ 61} The Court's holding explicitly acknowledged an Ohio constitutional right to a jury trial in a petty offense case. Thus, even though the right is not automatic in Ohio due to a procedural rule requiring a jury demand, the Ohio Supreme Court has recognized that the right to a jury in even a petty offense case is a constitutional right in this state. The effect of not properly procedurally filing a demand is to waive that constitutional right. This does not mean that there is no constitutional right. The constitutional right spoken of does not become a non-constitutional right just because a rule provides a procedural method by which the substantive right is to be exercised. See State ex rel. City of Columbus v. Boyland
(1979), 58 Ohio St.2d 490, 492-493 (stating that a rule providing for eight jurors in a misdemeanor trial does not violate the misdemeanor defendant's Ohio constitutional right to a jury trial because the rule is merely procedural in nature).
 {¶ 62} In another case, determining whether a jury demand by a petty offender was timely, the Ohio Supreme Court declared:
 {¶ 63} "The right of trial by jury is so fundamental under our criminal justice system that this fact, in and of itself, should compel the conclusion that the `date set for trial,' as used in Crim.R. 23(A), should mean ten days before the date set for the actual trial without regard to the number of continuances granted by the trial court." City of Tallmadge v. DeGraft-Biney
(1988), 39 Ohio St.3d 300, 301-302 (overruling State v.Stauffer (1976), 48 Ohio St.2d 54).
 {¶ 64} And, the Tallmadge Court concluded by pronouncing in favor of the petty offender:
 {¶ 65} "We recognize that we are living during a time of increased litigation, both criminal and civil, with attendant demands upon the judicial process. However, this factor should not stand in the way of a reasonable application of the rules to accommodate a fundamental constitutional right — the right of trial by one's peers." Id. at 303.
 {¶ 66} Even the Tallmadge dissent appreciated that the right to a jury in this petty offense case was both a constitutional and a statutory right. Id. at 306 (Holmes, J., dissenting to call for stricter application of the rules requiring timely demands). See, also, Garfield Hts. v. Perkins
(1994), 95 Ohio App.3d 602, 604 (where the Eighth District held that the Ohio Supreme Court's Tallmadge holding regarding the Ohio constitutional right to a jury trial for petty offenses is unaffected by the United States Supreme Court's Blanton
holding, which only dealt with the Sixth Amendment right to a jury trial), discretionary appeal not allowed (1994),71 Ohio St.3d 1404.
 {¶ 67} Notwithstanding federal case law interpreting theSixth Amendment as only providing a right to a jury trial for serious offenses, the Ohio Supreme Court has made multiple statements establishing that the Ohio Constitution provides a right to a jury trial even for petty offenses where there is the potential for imprisonment. Considering the language of the Supreme Court in Tate and Tallmadge, we conclude that just because the right is not automatic due to procedural legislation does not mean that there is no constitutional right to begin with.
 {¶ 68} We also note more historical Ohio Supreme Court law recognizing the right to jury if imprisonment is an available sanction:
 {¶ 69} "It has been frequently announced in the decisions of this court, some of which are quite recent, that the right of trial by jury obtains only where, under the provisions of the statute claimed to have been violated, a sentence of imprisonment may be imposed as a part of the punishment for such violation.Work v. State, 2 Ohio St. 296, 59 Am. Dec. 671; Inwood v.State, 42 Ohio St. 186; State ex rel. Smith v. Smith,69 Ohio St. 196, 68 N.E. 1044; State v. Borham, 72 Ohio St. 358,74 N.E. 220; Hoffrichter v. State, 102 Ohio St. 65, 130 N.E. 157; and Stiess v. State, 103 Ohio St. 33, 132 N.E. 85." Cochran v.State (1922), 105 Ohio St. 541, 542 (concluding that where the penalty imposed by criminal statute is merely a fine, the right of trial by jury as guaranteed by the Ohio Constitution does not apply).
 {¶ 70} We note here that the Work case was cited by theFoster Court when speaking of Ohio's jury trial right and when stating that the Ohio Constitution preserves for the defendant all the essential features of the jury known in Ohio common Law.Foster, 2006-Ohio-856 at ¶ 2. We also note that the Ohio statute defining the jury right had not been enacted at the time of the historical case law cited above.
 {¶ 71} For all of the above reasons, we conclude that the Ohio Supreme Court precedent provides that the Ohio Constitution generally provides a jury trial right even for petty offenders such as this defendant where incarceration was a potential penalty. It follows that the jury trial right of a petty offender is violated when the sentencing judge is required by statute to make factual findings in order to impose a maximum sentence where those certain maximum sentence facts were not determined by a jury or admitted by the pleading defendant. In accordance, the Supreme Court's Foster holding must be applied to invalidate R.C. 2929.22(C), which contains the maximum sentence requirements involving misdemeanor cases.
 {¶ 72} Although there is evidence on the record at the sentencing hearing that the trial court failed to correctly utilize the existing statutory maximum sentencing findings, resentencing is necessary for two reasons. One, that the severance and resentencing were the remedies declared necessary by the Supreme Court in Foster. One may think that severance of the maximum sentence provision here would still allow affirmance of the sentence because, after severance, the court is permitted to choose any sentence within the range without regard to the maximum sentence provisions. However, the Foster Court concluded by stating that all cases on direct review where sentencing involved statutes with unconstitutionally required factual findings must be reversed for new sentencing hearings where the court shall apply only the remaining constitutional provisions in the sentencing scheme and shall choose a sentence within the range of available sentences without regard to the sections declared unconstitutional. Foster at ¶ 103-104, 106.
 {¶ 73} Two, the trial court's entry stated that it considered all statutory sentencing criteria, which would include the invalid judicial fact-finding contained in R.C. 2929.22(C). Since this sentence was required to be based on an invalid statutory section, we must reverse for a new sentencing hearing.
 {¶ 74} For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for resentencing where judicial fact-finding shall not be utilized under the now severed R.C. 2929.22(C) when considering appellant's proper sentence. We will certify a conflict with State v. McQuerry,
8th Dist. No. 85053, 2005-Ohio-2181 to the Supreme Court if a timely request is made.
Donofrio, P.J., concurs.
DeGenaro, J., dissents; see dissenting opinion.
[1] The fact that felony maximum sentence findings had to be made on the record and misdemeanor maximum sentence findings do not, does not appear to be relevant to this analysis. The Supreme Court invalidated R.C. 2929.14(C) itself rather than just eliminating the actual statute that required the findings to be made on the record, R.C. 2929.19(B)(2)(d) and (e). As can be seen above, R.C. 2929.14(C) does not require recorded findings in its text, just as R.C. 2929.22(C) does not. See Foster,2006-Ohio-856 at ¶ 63.
[2] In re Criminal Sentencing Statutes Cases,
___ Ohio St.3d ___, 2006-Ohio-2721 (State v. Mitchell, 9th Dist. No. 228309,2005-Ohio-3833 (plea entered)), ___ Ohio St.3d ___,2006-Ohio-2626 (State v. Embry, 8th Dist. No. 82998,2004-Ohio-2986 (bench trial); State v. Rivera, 8th Dist. No. 85118, 2005-Ohio-3833 (plea entered); State v.Pina, 3d Dist. No. 5-04-55, 2005-Ohio-3231 (plea entered);State v. McQueen, 8th Dist. No. 85330, 2005-Ohio-4013
(bench trial)); ___ Ohio St.3d ___, 2006-Ohio-2394 (Statev. Weber, 1st Dist. No. C-040820, 2005-Ohio-4854 (plea entered); State v. Taylor, 5th Dist. No. 05-CA-34,2005-Ohio-6701 (plea entered); State v. Bulgin, 9th Dist. No. 05CA008697, 2005-Ohio-6734 (plea entered); Statev. Cottrell, 7th Dist. NO. 04CO53, 2005-Ohio-6923 (bench trial); State v. Phipps, 8th Dist. No. 86133 (plea entered); State v. Kendrick, 2d Dist. No. 20965,2006-Ohio-311 (plea entered)); 109 Ohio St.3d 313,2006-Ohio-2109 (State v. Blade, 8th Dist. No. 83796,2004-Ohio-4486 (plea entered); State v. Sanders, 11th Dist. No. 2003-L-144, 2004-Ohio-5937 (plea entered); Statev. Wheeler, 4th Dist. No. 2004-Ohio-6598 (plea entered);State v. Parsons, 11th Dist. No. 2003-A-0030,2004-Ohio-7237 (plea entered); State v. Hartsock, 6th Dist. No. L-03-1215, 2004-Ohio-6905 (plea entered); Statev. Hardie, 4th Dist. No. 04CA21, 2004-Ohio-7278 (plea entered); State v. Morales, 11th Dist. No. 2003-L-025,2004-Ohio-7239 (plea entered); State v. Curd, 11th Dist. No. 2003-L-030, 2004-Ohio-722 (plea entered)).